## No. 9573.

### CLAYCOMB & McNEELY vs. O. W. BISBEE ET ALS.

A sold machinery to B with obligation and guarantee to erect same, and that it should possess a specified working capacity. After having made advances to A, B refused to accept the mill because not complying with conditions of sale, and claimed from A reimbursement of advances. Thereupon, A, B and C made a contract by which C agreed to be substituted as purchaser in place of B, and A agreed to accept him as such substitute and to release B, and C, with the guarantee of A, agreed to repay to B the amount of his advances to A. *Held*, that B was not the vendor of the machinery to C, and was not entitled to vendor's privilege for the sum agreed to be paid to him.

In a case of doubt, where the circumstances are suspicious, this Court will not reverse the conclusion decreeing the simulation of a sale of the judge *a quo*, who saw and heard the witnesses.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Blanc & Butler* for Plaintiffs and Appellees:

1. Plaintiffs, as vendors, entitled to a judgment for the price, to-wit: $1287 02, with legal interest from judicial demand and costs; and to a further decree maintaining the sequestration and recognizing their vendors' lien upon the property sequestered. C. P. Art. 275, par. 7; C. C Art. 3227; 1 Ann, 82; 4 Ann, 453.

2. As lessors to a judgment for the accrued rent of the land on which the mill and machinery were erected; and to a further decree maintaining the provisional seizure and recognizing their lessors' privilege on the property provisionally seized. C. P. Art. 285, par. 2.

3. To a further judgment against O. W. Bisbee for $151 50 and interest, for wood sold and money loaned him, as per exhibit F.

4. To a further decree annulling the pretended transfer of the mill and machinery in controversy by defendant, O. W. Bisbee, to defendant, E. B. Benton, of date July 25, 1883,

as fraudulent and simulated, and condemning said defendants *in solido* for the full amount of plaintiffs' claim and costs. C. C. Arts. 1970 to 1985 inclusive, and Art. 2464; 6 *Ann*. 552; 29 Ann. 4; 30 *Ann*. 513; 36 *Ann*. 684.

*W. S Benedict* and *H. C. Cage* for Defendants and Appellants:

1. The sale of a thing belonging to another person is null. C. C. 2450.
2. Things of which the buyer reserves to himself the view and trial, although the price be agreed on, are not sold until the buyer be satisfied with the trial, which is a kind of suspensive condition of the sale. C. C. 2460.
3. A vendee who has not received the thing nor paid the price, can transfer only his right to require delivery on payment of the price. 3 R. 331 ; 5 M. 592.
4. Privilege can be claimed only for those debts to which it is expressly granted in this Code. C. C. 3185, 3312.
5. *Privilegia sunt strictissimae interpretationis*. They cannot be extended by implication or analogy ; they are never allowed but when expressly granted, and then only by virtue of an exact compliance with the legal requisites to their creation and existence. C. C. 3185, 3312 ; 2 L. 93 ; 11 L. 28 ; 18 L. 70 ; 2 R. 154 ; 11 R. 78, 279 ; 2 Ann. 549, 774, 961 ; 4 Ann. 310 ; 6 Ann. 112, 276 ; 10 Ann 431 ; 16 Ann. 107.
6. The vendor's privilege on movables can only be enforced while the goods are in possession of the vendee. 20 Ann. 545-557.

The opinion of the Court was delivered by

FENNER, J. In September, 1882, Claycomb & McNeeley, who carried on a wood-yard and were engaged in sawing and splitting wood for sale, entered into an agreement with L. W. Miller & Co., a machinery firm of this city, whereby Miller & Co. agreed, in consideration of the price and sum of $1,269.40, to sell, erect and place in working order, machinery for a saw-mill, to be completed within thirty days and to have a guaranteed capacity to handle fifty cords of wood *per* day—the price to be paid according to stipulated terms and the property to remain in the ownership of the sellers until payment.

Under this contract, Miller & Co. (or rather Miller, who was the sole person composing the pretended firm) went to work in erecting the mill, and Claycomb & McNeely advanced him $250 cash, and furnished him materials and labor to the further value of $1,037.

Although these advances thus appear to exceed the entire price to be paid, yet, Miller having failed to comply with his obligations in regard to the capacity of the mill, Claycomb & McNeely refused to accept the same and held Miller responsible for the $1,287 which had been advanced by them. Litigation had ensued between them, the exact nature of which the record does not disclose.

Under these circumstances, a mode of settlement was proposed by Miller which resulted in a contract which is the basis of the present action.

The parties thereto are Claycomb & McNeely, Miller, and O. W. Bisbee.

The contract is very long. After reciting the contract between plaintiffs and Miller for the purchase of the machinery, and the fact that they had advanced to Miller the said sum of $1,287, it proceeds:

"Whereas, O. W. Bisbee desires, with the approval of Miller, to be *substituted in the place and stead of C. & M. as the purchaser of said machinery*, and to acquire their right, title and interest in and to said machinery and the materials used in the erection of the same, for the price and upon the terms and conditions hereinafter mentioned.

"Now, therefore, it is agreed that C. & M. hereby assign, set over and convey, without warranty, to Bisbee," their aforesaid right, title and interest.

Then follow various other stipulations of C. & M. with reference to leasing to Bisbee the land on which the mill stood, and to furnish him with wood to saw and split and the price to be paid for work, etc.

Bisbee, on his part, accepts the transfer of the right, title and interest as made; binds himself to improve the mill to a capacity of thirty cords per day; to handle, by preference, wood supplied by C. & M., at prices fixed, and to allow the latter ten per cent of all gross earnings of the mill on wood handled either for them or for other parties, until the said allowances should have repaid to them the entire amount of the advances which had been made by them to Miller, viz: $1,287.

Miller agreed to relinquish all claims against C. & M. as purchasers, and to dismiss a certain suit which he had brought against them on that account; and "*to accept O. W. Bisbee as the purchaser of the machinery in lieu and place of Claycomb & McNeely.*"

He further bound himself to furnish Bisbee the additional machinery required to give the mill the stipulated capacity; and also guaranteed the complete performance of all the obligations assumed by Bisbee.

Bisbee took possession of the mill and Miller furnished him new machinery to the amount of $1500, for which he took notes with vendor's privilege.

Bisbee failed utterly to comply with his obligations under the contract, and subsequently made a sale or pretended sale of the property to one E. B. Benton. Thereupon plaintiffs brought the present suit against Bisbee, Miller and Benton, in which he claims judgment for the amount agreed to be paid by Bisbee and for an amount due for rent, with vendor's and lessor's privileges accordingly on the property which he caused to be seized under writs of sequestration and provisional seizure; and also for judgment annulling the sale to Benton.

37

The court *a qua* gave judgment against Bisbee for $1,456.52, maintained the sequestration and provisional seizure, recognized the vendor's privilege for $1,287.02, and the lessor's privilege for $28.50, and annulled the sale to Benton as fraudulent and simulated.

In so far as the moneyed judgment against Bisbee is concerned, it is fully sustained by the evidence.

There can be no question as to the correctness of the recognition of the lessor's privilege for rent and the maintenance of the writ of provisional seizure based thereon.

But from the statement of facts heretofore made, it appears clear to our minds that Claycomb and McNeely were not the vendors of the mill and machinery to Bisbee and, therefore, have no vendor's privilege for the debt due by Miller to them and assumed by Bisbee.

Miller was the original vendor to Claycomb & McNeely by a contract of sale which was never completed because the latter refused to accept the thing sold, and claimed reimbursement of payment and advances which had been made.

In this condition of affairs it was agreed between the three parties that Bisbee should be substituted as purchaser in place of Claycomb & McNeely; that Miller should accept him as such purchaser in place of C. & M.; and that Bisbee should assume payment of the claim of C. & M., with the guaranty of Miller. We have studied the terms of the contract carefully, and it admits of no other interpretation.

Hence, the judgment erred in recognizing the vendor's privilege and in maintaining the sequestration.

We have carefully weighed the circumstances attending the sale from Bisbee to Benton and all the evidence on the subject. They are of the most suspicious character, and excite in our minds such grave doubts of the reality of the transaction, that we do not feel authorized to reverse the conclusion of the district judge, who saw and heard the witnesses.

It is therefore ordered that judgment appealed from be amended by rejecting plaintiff's claim to a vendor's privilege; by dissolving the writ of sequestration issued; by reducing the amount of plaintiff's privilege from $1,315.52 to 528.50; and by subjecting the order directing the sale of the property seized to the condition that, upon paying the said amount of rent due, the said order shall be vacated; and that, in other respects and as thus amended, the said judgment be now affirmed.